LORI ASPINALL & another[1] vs. PHILIP MORRIS, INC.,[2]
& another.[3]

Suffolk. January 10, 2008. - March 16, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Tobacco. Advertising. Consumer Protection Act,* Unfair or deceptive act,
Exemption from liability.

Discussion of *Altria Group, Inc. v. Good,* 129 S. Ct. 538 (2008), in which the
  United States Supreme Court held that 15 U.S.C. § 1334(b) (2006), which
  forbids States from requiring warnings concerning smoking and health in
  addition to the warning required by the Surgeon General of the United
  States on cigarette packages, neither expressly nor impliedly preempts a
  claim regarding advertising or promotional statements made on cigarette
  packages under a State's act prohibiting unfair trade practices. [434]
In a class action alleging that the defendants had engaged in unfair or decep-
  tive practices in violation of G. L. c. 93A, §§ 2 and 9, when they sold
  cigarettes with the claim, on the package, that the cigarettes delivered
  lower tar and nicotine than regular cigarettes, the trial court judge did not
  err in granting summary judgment in favor of the plaintiffs, where the
  defendants did not meet their burden of showing that the plaintiffs' claim
  was exempted pursuant to G. L. c. 93A, § 3, on the ground that the Federal
  Trade Commission had affirmatively permitted the use of the descriptors
  on cigarette packages at issue here. [434-437]

CIVIL ACTION commenced in the Superior Court Department on
November 25, 1998.

The case was heard by *Peter M. Lauriat,* J., on motions for
summary judgment.

[1]Thomas Geanacopoulos, on behalf of themselves and all others similarly
situated.

[2]Now incorporated as Philip Morris USA Inc.

[3]Philip Morris Companies, Inc., now incorporated as Altria Group, Inc.

We acknowledge receipt of amicus briefs of Public Citizen, Inc., Campaign
for Tobacco-Free Kids, The Public Health Advocacy Institute, The American
Lung Association, The American Lung Association of Massachusetts, and The
American Cancer Society; of the Commonwealth; of Associated Industries of
Massachusetts and American Tort Reform Association; and of former commis-
sioners and senior staff of the Federal Trade Commission.

The Supreme Judicial Court granted an application for direct appellate review.

*Kenneth J. Parsigian* (*Michael K. Murray* with him) for the defendants.

*Todd S. Heyman* (*Thomas V. Urmy, Jr.,* with him) for the plaintiffs.

The following submitted briefs for amici curiae:

*Michael S. Fried* & *Christian G. Vergonis,* of the District of Columbia, & *Garfield B. Simms* for James C. Miller, III, & others.

*Allison M. Zieve, Brian Wolfman,* & *Jennifer Soble,* of the District of Columbia, & *John Roddy* for Public Citizen, Inc., & others.

*Robert A. Sherman, Donald R. Frederico, David G. Thomas,* & *Ellis V. Disch* for Associated Industries of Massachusetts & another.

*Martha Coakley,* Attorney General, & *Geoffrey G. Why,* Assistant Attorney General, for the Comonwealth.

IRELAND, J. This case involves a class action alleging that the defendants engaged in unfair or deceptive practices, in violation of G. L. c. 93A, §§ 2 and 9, when they sold Marlboro Lights cigarettes with the claim, on the package, that the cigarettes delivered lower tar and nicotine than regular cigarettes. See *Aspinall* v. *Philip Morris Cos.,* 442 Mass. 381, 385 (2004) (on interlocutory review, affirming order certifying class). On cross motions for summary judgment, the defendants argued that the plaintiffs' claim under G. L. c. 93A is barred by G. L. c. 93A, § 3, or, alternatively, preempted by Federal law. In 2006, a Superior Court judge denied the defendants' motion and allowed the plaintiffs' cross motion for summary judgment on the same issues. The judge reported his decisions to the Appeals Court. We granted the plaintiffs' application for direct appellate review. After oral argument, we issued a stay in this case because the United States Supreme Court had granted certiorari in a case that involved issues virtually identical to some of the issues here. *Altria Group, Inc.* v. *Good,* 128 S. Ct. 1119 (2008). As a result of the decision in *Altria Group, Inc.* v. *Good,* 129 S. Ct. 538 (2008) (*Good*), the sole issue remaining is whether the exemption provided by G. L.

c. 93A, § 3, applies to the plaintiffs' claim. Because we conclude that the defendants have not met their burden of showing that the Federal Trade Commission (FTC) affirmatively permits the use of descriptors such as "light" and "lower tar and nicotine" on cigarette packages, we affirm the grant of summary judgment for the plaintiffs but on grounds different from those set forth by the motion judge.

*Background and facts.* We summarize the essential undisputed facts.[4] In 1971, the defendants began marketing Marlboro Lights cigarettes. As required by the Federal Cigarette Labeling and Advertising Act (Act), the packages have contained the Surgeon General's warning. See 15 U.S.C. § 1333(a)(1) (2006). The packages also contain the terms "lights" and "lowered tar and nicotine" (descriptors). Although print media advertising for Marlboro Lights includes tar and nicotine yields as measured under a method sanctioned by the FTC, known as the FTC method or "Cambridge filter method," tar and nicotine yields have never been included on the packages of Marlboro Lights. Moreover, according to the FTC, the FTC method is designed only to "determine the amount of tar and nicotine generated when a cigarette is smoked by machine according to the prescribed method" and is not designed to determine the amount of tar and nicotine inhaled by an individual smoker.[5]

The plaintiffs allege, in their third amended complaint, that the defendants engaged in deceptive and unlawful conduct because, for a variety of reasons not pertinent here, Marlboro Lights did not deliver lowered tar and nicotine to smokers.[6] In their motion for summary judgment, the defendants argued that the plaintiffs' claim is expressly preempted by the Act, because it falls under the provision that forbids States from requiring additional warnings concerning smoking and health. 15 U.S.C. § 1334(b) (2006). They also claimed that the plaintiffs' G. L. c. 93A claim is barred

---

[4]The parties submitted a joint statement of undisputed facts to the judge.

[5]As of November, 2008, the Federal Trade Commission (FTC) has rescinded its indorsement of the FTC method and stated that it had never indorsed collateral descriptors. See *Altria Group, Inc.* v. *Good,* 129 S. Ct. 538, 551 (2008) (*Good*), citing 73 Fed. Reg. 74,500 (2008). This information was not before the judge.

[6]The plaintiffs' allegations were set forth in detail in *Aspinall* v. *Philip Morris Cos.,* 442 Mass. 381, 385-388 (2004).

by the doctrine of implied conflict preemption. In addition, the defendants contended that the plaintiffs' claim is barred by the exemption contained in G. L. c. 93A, § 3, because the FTC gave them permission to use descriptors such as "lights" and "lowered tar and nicotine."

*Discussion.* We begin by summarizing the holding in *Good*, *supra*, where the Court addressed whether 15 U.S.C. § 1334(b) expressly or impliedly preempted a claim under Maine's Unfair Trade Practices Act. *Id.* at 541.

The Court stated that, with respect to "advertising or promotion of any cigarette the packages of which are labeled in conformity with the provisions of the [Act]," § 1334(b) prohibits States from imposing "requirement[s] or prohibition[s] based on smoking and health." *Id.* at 544. However, it held that the Act's "phrase 'based on smoking and health' fairly but narrowly construed does not encompass the more general duty not to make fraudulent statements." *Id.* at 549. The Court also rejected the claim that Maine's statute was impliedly preempted under the Act because of policies of the FTC. *Id.* at 549. The Court analyzed the history of FTC policies and actions concerning the use of descriptors as well as representations based on the FTC method test, *id.* at 549-551, and concluded that "neither the handful of industry guidances and consent orders . . . nor the FTC's inaction with regard to 'light' descriptors even arguably justifies the pre-emption of state deceptive practices rules." *Id.* at 551.

In light of this decision, there was no preemption of the plaintiffs' claim by Federal law. We therefore turn to whether the judge erred in concluding that the plaintiffs' claim is not exempted pursuant to G. L. c. 93A, § 3. General Laws c. 93A, § 3, states in pertinent part: "Nothing in this chapter shall apply to transactions or actions otherwise permitted . . . by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States."

Pursuant to the statute, the defendants have the burden of proving the exemption. That burden is a heavy one. See *Fleming* v. *National Union Fire Ins. Co.*, 445 Mass. 381, 389 (2005). "To sustain it, a defendant must show more than the mere existence of a related or even overlapping regulatory scheme that covers the transaction. Rather, a defendant must show that such

scheme affirmatively *permits* the practice which is alleged to be unfair or deceptive." *Id.* at 390, quoting *Bierig* v. *Everett Sq. Plaza Assocs.*, 34 Mass. App. Ct. 354, 367 n.14 (1993).

The judge concluded that, in a 1971 consent decree the FTC entered into with another cigarette manufacturer, American Brands, Inc., the FTC gave the defendants permission to use the descriptors in advertising if they were accompanied by tar and nicotine yields according to the FTC method. He held, however, that because the defendants did not include tar and nicotine yields as well as the descriptors on their packages of Marlboro Lights, the defendants were not in compliance with that decree. The defendants argue that they were not required to put the yields on their packages.

The defendants' argument that the exemption of G. L. c. 93A, § 3, applies to them rests on the premise that, through consent decrees with other cigarette manufacturers and its failure to take action against cigarette manufacturers that put descriptors on their packages, the FTC "condoned," "authorized," and "permitted" the use of the descriptors "lights" and "lowered tar." The *Good* decision expressly rejected these arguments.

The Court stated that the 1971 consent decree "only *enjoined* conduct" and stated that a consent order is binding only on the parties to the agreement (i.e., American Brands, Inc., not the defendants) (emphasis added). *Good, supra* at 550 n.13. Furthermore, the history of the FTC's policies that the Court's opinion analyzed "shows that . . . the FTC has no long-standing policy authorizing collateral representations based on [the FTC method] test results. Rather, the FTC has endeavored to inform consumers of the comparative tar and nicotine content of different cigarette brands and has in some instances prevented misleading representations of [the FTC method] test results." *Id.* at 550. The Court also stated that there was no merit to the argument that the fact that the FTC failed to take action to require the tobacco companies to "correct their allegedly misleading use of 'light' descriptors is not evidence . . . [of] a policy of approval."[7] *Id.* The Court noted that it was "particularly inappropriate to read a policy of

[7] In their supplemental brief, the plaintiffs point out that the Federal government itself has successfully prosecuted Philip Morris USA Inc. for using the very descriptors at issue here. The court found the terms to be false and

authorization into the FTC's inaction when that inaction is in part the result of [the] failure to disclose study results showing that [the FTC method] test results do not reflect the amount of tar and nicotine that consumers of 'light' cigarettes actually inhale." *Id.* at 551 n.14.[8]

The defendants argue that the United States Supreme Court's findings concerning FTC authorization of descriptors bear only on the issue of conflict preemption and are not dispositive of whether the FTC has given affirmative permission for the descriptors within the meaning of G. L. c. 93A, § 3. Even assuming that we should not rely on the United States Supreme Court's conclusion concerning the lack of authorization for the use of descriptors, the defendants point to nothing approaching a showing that the FTC has affirmatively permitted the use of descriptors.[9] Inferences cannot be the basis for satisfying the defendants' heavy burden under the statute. See *Commonwealth* v. *Fremont*

---

enjoined their continued use. See *United States* v. *Philip Morris USA, Inc.,* 449 F. Supp. 2d 1, 859-861, 938-939 (D.D.C. 2006). See also United States *vs.* Philip Morris USA Inc., U.S. Ct. App., Nos. 06-5267, 06-5268, 06-5269, 06-5270, 06-5271, 06-5271 (D.C. Cir. Nov. 1, 2006) (granting stay pending appeal).

[8]Even assuming that the defendants' claim that the 1971 consent decree applied to them is valid, it still does not give affirmative permission for the defendants to use descriptors on cigarette packages. That decree stated, inter alia, that in all advertising, American Brands, Inc., could use descriptors such as "low" and "lower" as long as "the statement is accompanied by a clear and conspicuous disclosure [of] [t]he 'tar' and nicotine content in milligrams in the smoke produced by the advertised cigarettes." We agree with the United States Court of Appeals for the First Circuit: "[I]f the portion of the 1971 consent order requiring disclosure of tar and nicotine yields does not apply to cigarette packages, then it would seem to us, neither does the portion of the order permitting the use of descriptors. Otherwise the order [would allow the manufacturer] . . . to continue the same allegedly deceptive practice that led the FTC to seek the order in the first place." *Good* v. *Altria Group, Inc.,* 501 F.3d 29, 57 (1st Cir. 2007), aff'd, 129 S. Ct. 538 (2008).

[9]Besides the 1971 consent decree, discussed *supra* at note 8, the defendants cite to (1) a 1967 letter to the National Association of Broadcasters from the FTC that its current policy concerning enforcement of "statements of, and, representations relating to tar and nicotine content" is that "[a]s a general rule [it] will not challenge such statements or representations where they are shown to be accurate and fully substantiated by [FTC approved] tests"; (2) FTC opposition to a proposal to allow States to regulate cigarette advertising that discusses tar and nicotine using the terms "content" "figures" and "data," but not the term "descriptors"; and (3) a paragraph in a 1995 consent order with American Tobacco Company that states that it would not necessar-

*Inv. & Loan,* 452 Mass. 733, 737-738, 750-751 (2008) (legality of each of four features defendant used to cater to low income borrowers insufficient to satisfy burden under G. L. c. 93A, § 3, where defendant used those features in combination and was unable to show that combination of features was affirmatively permitted). Moreover, a high ranking FTC official stated in a deposition that the FTC has no official position on descriptors on cigarette packages. This testimony is supported by FTC documents that state that there is no official definition for the terms "light" and "low tar" and that FTC guidance concerning the FTC method did not "apply to other conduct or express or implied representations, even if they concern[ed] tar and nicotine yields." *Good, supra* at 551, quoting 73 Fed. Reg. 40,351 (2008). Indeed, in 2002, Philip Morris USA Inc. filed a petition asking the FTC to enact a formal trade regulation rule permitting the industry to continue to use the descriptors subject to certain conditions.

The defendants have failed to meet their burden of showing that they were given affirmative permission to use the descriptors at issue here and that, therefore, the statutory exemption applies. There was no error.

*Conclusion.* For the reasons set forth above, we affirm the order granting summary judgment for the plaintiffs and denying summary judgment for the defendants. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

ily violate the provisions of the order if there was a presentation of "tar and/or nicotine ratings of any of respondent's brands of cigarettes and [those] of any other brand (with or without an express or implied representation that respondent's brand is 'low' 'lower' or 'lowest' in tar and/or nicotine)."

Besides the obvious lack of explicit permission, these statements are taken out of context. For example, the paragraph quoted from the 1967 letter is preceded by a paragraph that states that the FTC favors mandatory labeling of tar and nicotine yields on cigarette packages. As the United States Supreme Court stated in the *Good* decision, inaction is not grounds for concluding that an affirmative policy exists, especially where cigarette manufacturers kept test information from the FTC. *Good, supra* at 550. In addition, the 1995 consent order cannot be read to allow descriptors independent of the tar and nicotine ratings.